UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRANDI THOMAS                                    CIVIL ACTION

v.                                               NO. 18-2921

FLORIDA PARISHES JUVENILE
JUSTICE COMMISSION and
FLORIDA PARISHES JUVENILE                        SECTION "F"
JUSTICE DETENTION CENTER

ORDER AND REASONS

Before the Court is the defendants' motion for summary
judgment.  For the reasons that follow, the motion is GRANTED, in
part, and DENIED, in part.

**Background**

This pregnancy discrimination lawsuit arises out of a
Juvenile Detention Staff Officer's claims that her employer
refused to accommodate her during her pregnancy.

The Florida Parishes Juvenile Justice District is a political
subdivision with territorial jurisdiction over the five parishes
that comprise Louisiana's 21st and 22nd Judicial Districts.[1]  La.
R.S. § 15:1094.  In turn, the Florida Parishes Juvenile Justice
Commission is charged with assisting children who enter the
juvenile justice system to become productive, law-abiding citizens
of the community.  La. R.S. §§ 15:1094.1-15:1094.2.  To fulfill

---

[1] The constituent parishes include Livingston, St. Helena, St.
Tammany, Tangipahoa, and Washington.

1

its mission, the Commission operates the Florida Parishes Juvenile Detention Center, a facility that houses juveniles whose confinement has been ordered by courts within the District.[2] Practically indistinguishable from an adult correctional facility, the Center features a substantial correctional infrastructure, including electronically locking doors, razor ribbon topped fencing, and video surveillance.

In addition, the Center is staffed with Juvenile Detention Staff Officers, who care for and supervise the Center's detainees. In light of the detainees' potentially violent nature, the Center requires its JDS Officers to receive training in defensive tactics and continually demonstrate a defined level of physical fitness. Accordingly, pursuant to Policy 3.10 of Chapter 3 of the Center's Policy and Procedure Manual, entitled "Physical Fitness Requirement," JDS Officers must complete and pass bi-annual physical fitness testing.[3] Such physical fitness testing consists of five separate components: (1) Sit and Reach; (2) Bench Press;

---

[2] Operating on a 24/7 basis, the Center ensures that its juvenile detainees are made available for hearings and are otherwise at the disposition of the courts.

[3] The Center amended its physical fitness standards after the events giving rise to this lawsuit occurred, such that physical fitness is now considered as part of an employee's yearly job performance evaluation. Any references to the Center's Physical Fitness Requirement in this Order and Reasons pertain to the policy in effect during the summer of 2016.

(3) Push-ups; (4) Sit-ups; and (5) a 1.5 mile run, with gender-specific proficiency requirements set forth for each component.[4]

Brandi Thomas began working as a JDS Officer at the Center in January of 2007. Nearly a decade into her tenure with the Commission, she became pregnant. On April 1, 2016, Thomas informed Norleidy Hernandez, the Center's Human Resources Director, of her pregnancy and requested to perform the bi-annual physical fitness test in advance of its regularly scheduled date of April 21, 2016. Hernandez allowed Thomas to complete four components of the test on the same day of the request, all of which she passed. However, Hernandez explained that the fifth component – the 1.5 mile run – would take place as scheduled on April 21, 2016.

In the meantime, Thomas provided the Center with a note from her OB/GYN, Dr. Katherine Williams, that validated her pregnancy. The note, dated April 6, 2016, stated:

> Pt is 6 weeks & 1 day pregnant.

Thomas then attempted the 1.5 mile run on April 21, 2016 and failed. In accordance with the Center's Physical Fitness

---

[4] The Center is also staffed with Control Room Operators, who are not involved in the direct care of juveniles and receive significantly different training than JDS Officers. Therefore, the Center cannot temporarily move a CRO to a JDS position in order to accommodate a JDS Officer who requires light duty work. In addition, because the Center operates on a four-shift basis and schedules just one CRO to work during any given shift, CRO positions do not often become available.

Requirement Policy, Hernandez informed Thomas that a re-test would be scheduled for May 5, 2016.[5]

Feeling ill after attempting the initial run, Thomas went to the emergency room on April 29, 2016, where she was diagnosed with a placental bleed.  Upon receiving this information, Thomas called the Center to advise of her condition and that she had been placed on physician-ordered bed rest from Sunday, May 1 through Monday, May 2, 2016.

During a follow-up appointment with Dr. Williams on May 2, 2016, Thomas was placed on light duty work for two weeks.  To document Thomas's work restrictions, Dr. Williams issued a note, stating:

> Pt must continue pelvic rest & light activity
> for 2 weeks.  Dx: pregnancy complications.

---

[5] Specifically, the Center's Policy and Procedure Manual provides:
> Upon testing, the employee will have 5 physical ability components to pass . . . . The employee must complete all 5 components to have successfully passed the test for 100% achievement.  **If an employee is unable to initially pass all 5 components (100%) [but] passes 3 or more components (60+%), he/she will be given a remediation period of 2 weeks (from the date of the test), to prepare for and successfully complete the previously failed components.**  On the 2 week test date, should the employee fail to successfully complete the remaining components, he/she will be subject to termination.

Emphasis added.

Thomas promptly informed the Center of Dr. Williams's order. But, because no light duty work was available at that time, Thomas took personal leave for two weeks. And because Thomas was on leave on May 5, 2016, the run that had been re-scheduled for that day did not take place.

A few weeks later, Thomas provided the Center with a note dated May 19, 2016 from Dr. Williams, advising:

> Brandi Thomas can go back to work with no restrictions.

Accordingly, Thomas returned to work on May 21, 2016 and was informed that her second attempt at the 1.5 mile run would take place on June 6, 2016. In response, Thomas provided her supervisor, Ashton Magee, with yet another note dated May 19, 2016 from Dr. Williams. That doctor's note stated:

- Pt is medically advised to avoid extended running & heavy lifting do [sic] high risk pregnancy
- Dx: Dm
- Can perform AMA x 6 wks & PP period
- Call office for quest

Upon being presented with this note, Magee informed Thomas that she nonetheless would be required to perform the run and should not turn in the note. Magee explained that the Center had a custom of not excusing pregnant women from the 1.5 mile run, even with a doctor's note. However, the Center would excuse non-pregnant employees with physical limitations from the 1.5 mile run with an appropriate doctor's note. Ashton Magee also attests in his

affidavit that, during his three-year tenure as a JDS Officer and Supervisor, he was aware of "several employees" who were not excused from the 1.5 mile run because of their pregnancy.[6]

Relying upon Magee's advice, Thomas did not present the doctor's note to the Center's HR Director and attempted the run on June 6, 2016. She failed once again.[7] Shortly after this attempt, Thomas experienced severe pain and was transported to the emergency room where she was treated for a back injury.[8] On June 7, 2016, Thomas sought follow-up treatment from Dr. David Tran, who placed her on light duty work for the remainder of her pregnancy. Because the Center had no light duty positions available, Thomas filed a workers' compensation claim. However, by letter dated June 28,

---

[6] In its Order dated December 13, 2018, this Court granted the plaintiff leave to file corrected affidavits of Brandi Thomas and Ashton Magee and an additional exhibit – namely, a second May 19, 2016 doctor's note drafted by Dr. Katherine Williams – in support of her opposition to the defendants' motion for summary judgment. Accordingly, all references to the Magee affidavit in this Order and Reasons concern the "corrected" affidavit.

[7] After the second failed attempt, Russell Sanders, the Center's Director of Operations, told Thomas: "You can always come back as a rehire like Tuckson did. Get yourself in shape and reapply." Upon receiving a letter from Tom Hogan, advising that he would be representing Thomas, the HR Director called to inform Thomas that she had not been terminated and that accommodations would be made.

[8] Meanwhile, the Center received an additional note from Dr. Williams regarding Thomas's pregnancy-related restrictions. Dr. Williams's fifth note, dated June 7, 2016, states:

> Brandi Thomas was seen on April 20th for a prenatal visit. At the visit it was decided that my patient is unable to run until she delivers in November 2016. Please call with any questions or concerns.

2016, Dr. Tran released Thomas "to go back to work full duty." And by note dated July 1, 2016, Dr. Jamie Hymel, a physician in Dr. Williams's OB/GYN practice, released Thomas "to return to full duty @ work."  Dr. Hymel's note further advised:

> [Thomas] is currently 18 weeks pregnant.  Her limitations are no running; lifting 20 #'s is her limit.  Please call with any questions or concerns.

After receiving inconsistent orders from Thomas's physicians, the Center offered Thomas a newly available light duty position as a Control Room Operator, which she accepted.  Thomas served in this light duty position from July 3, 2016 until August 9, 2016 when she was ordered to bed rest for the remainder of her pregnancy. Thomas returned to work on September 17, 2017 and is currently employed with the Commission.

After exhausting her remedies with the Equal Employment Opportunity Commission, Thomas sued the Florida Parishes Juvenile Justice Commission and the Florida Parishes Juvenile Detention Center for employment discrimination.  In her complaint, she alleges pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k), and in violation of Louisiana's employment discrimination statute, La. R.S. § 23:342.  Thomas also asserts claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the Family and

Medical Leave Act, 29 U.S.C. § 2601 *et seq.* The defendants now move for summary judgment on the following grounds: (1) the Florida Parishes Juvenile Detention Center is not a juridical entity capable of suing and being sued; and (2) no genuine issue of material fact exists concerning the failure of plaintiff's pregnancy discrimination, ADEA, and FMLA claims.

## I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and

unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. Anderson, 477 U.S. at 249 (citations omitted); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of her case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d

824, 830 (5th Cir. 2013) (internal quotation marks and citation omitted).

## II.

As a threshold matter, the Court notes that the plaintiff only opposes the defendants' motion for summary judgment insofar as it seeks dismissal of her pregnancy discrimination claims.[9] Accordingly, summary judgment in favor of the defendants is appropriate as to their contentions that: (1) the Center is not an

---

[9] Although the plaintiff's complaint names the Florida Parishes Juvenile Justice Commission and the Florida Parishes Juvenile Detention Center as co-defendants, Thomas concedes in her opposition papers that the Center is merely the name of a juvenile detention facility operated by the Commission, rather than an independent juridical entity capable of suing and being sued.

In addition, despite alleging in her complaint that the defendants violated the Americans with Disabilities Act by refusing to accommodate her requests to delay the 1.5 mile run, Thomas concedes in her opposition papers that she is not "disabled" within the meaning of the ADA, such that her ADA claim should be dismissed. See 42 U.S.C. § 12102(2) (An individual is disabled under the ADA if she (1) has "a physical or mental impairment that substantially limits one or more major life activities[;]" (2) has "a record of such an impairment; or" (3) "is regarded as having such an impairment.").

Finally, the plaintiff alleges in her complaint that the defendants violated the Family and Medical Leave Act by retaliating against her for taking medical leave due to pregnancy-related complications. But, she concedes in her opposition papers that her FMLA claim should be dismissed because she did not make a request for leave under the FMLA. See 29 U.S.C. § 2612(a)(1)(D) ("[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."); 29 U.S.C. § 2613 ("An employer may require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee.").

independent juridical entity capable of suing and being sued; (2) no genuine issue of fact exists concerning the failure of plaintiff's ADA claim; and (3) no genuine issue of fact exists respecting the failure of her FMLA claim.

III.

The Court next considers Thomas's claim that the Commission engaged in pregnancy discrimination in violation of Title VII and Louisiana's employment discrimination statute in refusing to accommodate her pregnancy-related running restriction. Specifically, the plaintiff alleges that, because the Commission excused non-pregnant employees with physical limitations from the 1.5 mile run with an appropriate doctor's note, it was required to accommodate her as well. The Commission counters that Thomas has failed to establish a prima facie case of pregnancy discrimination because she suffered no adverse employment action.

*A.*

Title VII of the Civil Rights Act of 1964 forbids a covered employer "to discriminate against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Following the enactment of the Pregnancy Discrimination Act, Title VII further specifies:

> The term[] "because of sex" . . . include[s] . . . because of . . . pregnancy, childbirth, or related medical conditions; **and** women

11

> affected by pregnancy, childbirth, or related
> medical conditions shall be treated the same
> for all employment-related purposes . . . as
> other persons not so affected but similar in
> their ability or inability to work.

Id. § 2000e(k) (emphasis added). Similarly, Louisiana's employment discrimination statute prohibits an employer from discriminating against an employee "because of . . . pregnancy, childbirth, or related medical condition," and from refusing to allow such an employee "[t]o receive the same benefits or privileges of employment granted . . . to other persons not so affected who are similar in their ability or inability to work." La. R.S. § 23:342(1),(2)(a).[10] Notably, "Louisiana courts and

---

[10] Section 342 of Title 23 of the Louisiana Revised Statutes provides, in part:

> It shall be an unlawful employment practice
> unless based upon a bona fide occupational
> qualification:
>     (1) For any employer, because of the
> pregnancy, childbirth, or related medical
> condition of any female employee, to refuse to
> promote her, or to refuse to select her for a
> training program leading to promotion,
> provided she is able to complete the training
> program at least three months prior to the
> anticipated date of departure for her
> pregnancy leave, or to discharge her from
> employment or from a training program leading
> to promotion, or to discriminate against her
> in compensation or in terms, conditions, or
> privileges of employment.
>     (2) For any employer to refuse to allow
> a female employee affected by pregnancy,
> childbirth, or related medical conditions
> either:

federal courts applying Louisiana law have routinely looked to federal jurisprudence to interpret Louisiana employment discrimination statues." Smith v. Amedisys Inc., 298 F.3d 434, 448 (5th Cir. 2002). Accordingly, this Court considers the plaintiff's federal and state law pregnancy discrimination claims together.

Thomas's claim that the Commission refused to accommodate her pregnancy-related running restriction while accommodating running restrictions of non-pregnant workers implicates the second clause of the Pregnancy Discrimination Act and its counterpart under Louisiana's employment discrimination law. Compare 42 U.S.C. § 2000e(k) ("[W]omen affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work.") with La. R.S. § 23:342(2)(a) ("[An employer may not] refuse to allow a female employee affected by pregnancy, childbirth, or related medical conditions . . . [t]o receive the same benefits or privileges of

_____

> (a)   To receive the same benefits or privileges of employment granted by that employer to other persons not so affected who are similar in their ability or inability to work, including to take disability or sick leave or any other accrued leave which is made available by the employer to temporarily disabled employees.
> . . .

employment granted . . . to other persons not so affected who are similar in their ability or inability to work . . . ."). Moreover, in alleging that the Commission's failure to accommodate was motivated by her protected trait – that is, her pregnancy – Thomas seeks to advance a disparate treatment claim. See Young v. UPS, 135 S. Ct. 1338, 1345 (2015) (citations omitted). The plaintiff may establish such a claim "either (1) by direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, or (2) by the burden-shifting framework set forth in McDonnell Douglas."[11]  Id. (citations omitted).

*B.*

In this case, Thomas urges that she has presented direct evidence of pregnancy discrimination through the affidavit of her

---

[11] When no direct evidence of discrimination is offered, the Court applies the McDonnell Douglas burden-shifting framework. See Urbano v. Continental Airlines, 138 F.3d 204, 206 (5th Cir. 1998). Under this standard, the plaintiff establishes "a *prima facie* case of discrimination by showing that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) others similarly situated were treated more favorably." Appel v. Inspire Pharms., Inc., 428 F. App'x 279, 281 (5th Cir. 2011). Once the plaintiff has established a prima facie case, the burden shifts to the employer to "provide 'some legitimate nondiscriminatory reason' for the adverse action taken." Id. at 282 (quoting McDonnell Douglas Corp v. Green, 411 U.S. 792, 802 (1973)). If the employer meets this burden, the plaintiff must then "show a genuine issue of material fact that (1) the employer's proffered nondiscriminatory reason is a pretext for discrimination or (2) regardless of the nondiscriminatory reason, the discriminatory reason was a motivating factor in the employer's action." Id.

supervisor, Ashton Magee. In his affidavit, Magee attests as follows:

> 1) I, Aston Magee, served as Brandi Thomas' supervisor at Florida Parishes Juvenile Detention Center ("Detention Center") at the time of Ms. Thomas' pregnancy in 2016.
>
> 2) Ms. Thomas presented me with a doctor's note prior to her June 6th run that requested she not run in the required physical fitness test.
>
> 3) The note presented to me by Ms. Thomas is the note seen in Exhibit C.[12]
>
> **4) The Detention Center did not allow pregnant employees from being excused** [sic] **from the Physical Fitness Test – 1.5 mile run even with a doctor's note.**
>
> **5) However, the Detention Center, would let other non-pregnant employees with physical limitations be excused from the 1.5 mile run with an appropriate doctor's note.**
>
> **6) I communicated to Ms. Thomas that she would have to do the run and that she should not turn in the doctor's note per the Detention Center's custom regarding pregnant women and the Physical Fitness Testing.**
>
> 7) I worked at the Detention Center as a JDS and Supervisor for 3 years, and over the course of my time there was aware of several employees who were not excused from the run because of their being pregnant.

---

[12] Comprising Exhibit C is a May 19, 2016 doctor's note, in which Dr. Katherine Williams states:

- Pt is medically advised to avoid extended running & heavy lifting do [sic] high risk pregnancy
- Dx: Dm
- Can perform AMA x 6 wks & PP period
- Call office for quest

8) Ms. Thomas was only seeking to be excused from the run as an accommodation and could perform other functions of her job.

9) Based on my understanding, Ms. Thomas could have continued to work as a Juvenile Detention Staff ("JDS") officer throughout her pregnancy if she had been afforded an opportunity to not participate in the 1.5 mile run.

Emphasis added.

Where a plaintiff "presents direct evidence of discrimination, 'the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.'" Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C., 778 F.3d 473, 475 (5th Cir. 2015) (quoting Brown v. E. Miss. Elec. Power Ass'n, 989 F.2d 858, 861 (5th Cir. 1993)).  Fifth Circuit precedent further instructs that, in determining whether a workplace comment constitutes "direct evidence" of discrimination, rather than a "stray remark," a court must consider whether the comment: (1) relates to the plaintiff's protected characteristic; (2) was made proximate in time to the challenged employment decision; (3) was made by an individual with authority over the challenged employment decision; and (4) relates to the challenged decision.  Id. (citing Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 222 (5th Cir. 2001)).

Thomas contends that Ashton Magee's statement to her when she presented him with Dr. Williams's May 19, 2016 note advising of

16

her pregnancy-related running restriction is direct evidence of pregnancy discrimination. According to Magee's affidavit, he informed Thomas that "she would have to do the run and that she should not turn in the doctor's note" because the "Center did not allow pregnant employees from being excused [sic] from the Physical Fitness Test – 1.5 mile run even with a doctor's note" but "would let other non-pregnant employees with physical limitations be excused from the 1.5 mile run." Drawing all reasonable inferences in the light most favorable to the non-movant, the Court finds that Magee's remark constitutes "direct evidence" under the Fifth Circuit's applicable standard because it (1) directly relates to Thomas's protected characteristic – her pregnancy; (2) was made simultaneously with the challenged employment decision – the failure to accommodate her request to delay the run; (3) was "made by someone with some ill-defined 'authority over the employment decision at issue'" because Magee was her supervisor at the time she requested the accommodation; and (4) directly relates to the challenged decision – the failure to accommodate her pregnancy-related running restriction. See Martin v. Winn-Dixie Louisiana, Inc., 132 F. Supp. 3d 794, 818 (M.D. La. 2015) (quoting Krystek v. Univ. of S. Miss., 164 F.3d 251, 256 (5th Cir. 1999)).

Thomas goes on to contend that, even if Magee's statement does not constitute direct evidence of pregnancy discrimination, she has nonetheless established a prima facie case of disparate

treatment through indirect evidence. Notably, the Supreme Court, in Young v. UPS, 135 S. Ct. 1338 (2015), "established a new test by which courts are to analyze failure to accommodate claims brought by pregnant workers who seek to rely upon indirect evidence to establish disparate treatment in violation of Title VII." Luke v. CPlace Forest Park SNF, LLC, No. 13-00402-BAJ-EWD, 2016 U.S. Dist. LEXIS 105295, at *5 (M.D. La. Aug. 9, 2016). Under Young, a pregnant worker may make out a prima facie case that "the denial of an accommodation constituted disparate treatment under the Pregnancy Discrimination Act's second clause" by showing that she (1) "she belongs to the protected class;" (2) "she sought accommodation;" (3) "the employer did not accommodate her;" and (4) "the employer did accommodate others 'similar in their ability or inability to work.'" Young, 135 S. Ct. at 1354. If the plaintiff establishes a prima facie case, the burden shifts to the employer to introduce evidence of a legitimate, nondiscriminatory reason for denying the requested accommodation. Id. If the employer offers a legitimate, nondiscriminatory reason for the denial, the plaintiff must show that the employer's proffered reason is "in fact pretextual." Id. In this regard, the plaintiff must introduce evidence that (1) the "employer's policies impose a significant burden on pregnant workers," such as "evidence that the employer accommodates a large percentage of nonpregnant workers while failing to accommodate a large percentage of pregnant

workers," and (2) "the employer's 'legitimate, nondiscriminatory' reasons are not sufficiently strong to justify the burden." Id.

In this case, Thomas has established a prima facie case of pregnancy discrimination under Young, at the summary judgment stage, through the affidavit of Ashton Magee. In other words, she has introduced competent summary judgment evidence to support the inferences that: (1) she was pregnant; (2) she sought an accommodation by presenting a doctor's note to her supervisor regarding her pregnancy-related running restriction; (3) the Commission failed to accommodate her when Magee stated that "she would have to do the run;" and (4) the Commission accommodated other employees who were similar in their inability to work by allowing "non-pregnant employees with physical limitations [to] be excused from the 1.5 mile run with an appropriate doctor's note."

The Commission maintains that Thomas has failed to establish an *actionable* claim of pregnancy discrimination because she suffered no adverse employment action. Indeed, "the Fifth Circuit has held that 'adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.'" Peuler v. Jewell, No. 14-0247, 2016 U.S. Dist. LEXIS 141363, at *14 (E.D. La. Oct. 12, 2016) (quoting McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007) (internal citations omitted)). And Thomas concedes in her opposition papers that she "was not subject to a failure to hire,

was not discharged, and was not denied leave, a promotion or compensation." However, she urges this Court to find that she suffered an adverse employment action "based on the injuries incurred when required to run 1.5 miles." Thomas submits that she suffered a physical back injury, which necessitated the filing of a workers' compensation claim and resulted in a reduction in pay. Because the Fifth Circuit has recognized neither an employment decision resulting in physical injury, nor an intermediate employment decision with a tangential effect on compensation as an "ultimate employment decision," Thomas has suffered no adverse employment action under current Fifth Circuit precedent.

But, the Court finds that an employee need not suffer an adverse employment action in order to establish an actionable claim of pregnancy discrimination under the second clause of the Pregnancy Discrimination Act. Although neither the Supreme Court, nor the Fifth Circuit, has explicitly addressed this issue, the Court finds support in the text of the Pregnancy Discrimination Act itself, as well as the Supreme Court's decision in Young. Notably, the PDA provides, in part:

> [W]omen affected by pregnancy, childbirth, or related medical conditions shall be treated the same for **all employment-related purposes**, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work.

42 U.S.C. § 2000e(k) (emphasis added). More importantly, the existence of an adverse employment action is not an element of a prima facie case of pregnancy discrimination based on failure to accommodate under Young. See Young, 135 S. Ct. at 1354 (holding that a pregnant worker can establish a prima facie case by showing "that she belongs to the protected class, she sought accommodation, that the employer did not accommodate her, and that the employer did accommodate others 'similar in their ability or inability to work.'"). Because Thomas has sustained her burden, at the summary judgment stage, of presenting competent evidence to support her disparate treatment claim of pregnancy discrimination, summary dismissal of this claim is not appropriate.[13]

*C.*

Thomas next contends that she has presented sufficient evidence to establish a disparate impact claim of pregnancy discrimination. "To establish a prima facie case of discrimination under a disparate-impact theory, a plaintiff must show: (1) an identifiable, facially neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two." McClain v. Lufkin Indus., 519 F.3d 264, 275 (5th Cir. 2008) (citing Watson v. Fort Worth Bank &

---

[13] The Court underscores that the amount of her damages, because she has suffered no adverse employment action, remains at risk during a trial on the merits.

_Trust_, 487 U.S. 977, 994 (1988)).  Generally, causation is established "by offering statistical evidence to show that the practice in question has resulted in prohibited discrimination." _Stout v. Baxter Healthcare Corp._, 282 F.3d 856, 860 (5th Cir. 2002).  However, the Fifth Circuit has recognized that a plaintiff may establish a prima facie case of disparate impact pregnancy discrimination without statistical evidence where she demonstrates that the challenged employment policy affects "all or substantially all pregnant women."  See _id._ at 860-61 (citing _Garcia v. Women's Hospital of Tex._, 97 F.3d 810 (5th Cir. 1996)).

Here, Thomas challenges the Commission's required five-part physical fitness test.  She alleges that this policy "causes a disparate impact on those with a protected trait (pregnancy)" because it "results in a harsher effect on one group, compared to others."  But, Thomas points to no evidence to demonstrate that pregnant women are disproportionately impacted by the physical fitness test requirement.  And her request that the Court defer ruling on this issue until discovery is complete is not supported by an affidavit or declaration as required by Federal Rule of Civil Procedure 56(d).

Accordingly, for the foregoing reasons, IT IS ORDERED: that the defendants' motion for summary judgment is hereby GRANTED, in part, and DENIED, in part.  The motion is GRANTED, in part, as unopposed, as to: (1) the defendants' contention that the Center

is not an independent juridical entity capable of suing and being sued; (2) the plaintiff's ADA claim; and (3) the plaintiff's FMLA claim. The motion is GRANTED, in part, as to the plaintiff's disparate *impact* claim of pregnancy discrimination, and DENIED, in part, as to the plaintiff's disparate *treatment* claim of pregnancy discrimination under Title VII and Louisiana's employment discrimination statute. IT IS FURTHER ORDERED: that the Florida Parishes Juvenile Detention Center is hereby DISMISSED from this lawsuit, and that the plaintiff's ADA, FMLA, and disparate *impact* pregnancy discrimination claims are DISMISSED. The plaintiff's disparate *treatment* claim of pregnancy discrimination against the Florida Parishes Juvenile Justice Commission remains before the Court.

New Orleans, Louisiana, January 7, 2019

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE